UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY LEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAINE PUBLIC EMPLOYEES )<br>RETIREMENT SYSTEM, )<br>)<br>Defendant. ) | No. 1:21-cv-00219-LEW |

## ORDER ON MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint for failure to state a claim. Defendant's Motion to Dismiss (ECF No. 5). For the reasons that follow, I deny Defendant's motion.

### BACKGROUND

Plaintiff, Mary Lee, is a Maine resident who has been employed by Defendant, Maine Public Employees Retirement System ("MainePERS"), since June 2013. Compl. ¶¶ 2, 11. Plaintiff is Asian-American and was born in Hong Kong. *Id.* ¶ 9. Plaintiff alleges that, during her time working for Defendant, she has experienced a series of slights, abuses, and racist remarks from multiple coworkers, and that Defendant has failed adequately to respond to those harms.[1]

Plaintiff alleges that she experienced three specific instances of racially insensitive treatment at MainePERS. In early 2014, Plaintiff was asked by a MainePERS supervisor

---

[1] Because this matter appears before me on Defendants' motion to dismiss, I will treat all of Plaintiff's factual allegations as true for purposes of the motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

whether she sold drugs, after the supervisor asserted that "[a]ll Asians are drug dealers." *Id.* ¶ 20. Plaintiff states that she was "humiliated and devastated by this comment," and that she "filed a grievance with [her union] and MainePERS Human Resources about this racist comment." *Id.* ¶ 21–22. Plaintiff neither details any response by Defendant, nor does she specifically allege that Defendant failed to respond to this grievance. However, Plaintiff states that she was "singled out" for improper timekeeping practices, which she believes was in retaliation for her reporting the aforementioned racist comment. *Id.* ¶ 24.

Second, in February of 2018, MainePERS supervisor Lynn Hancock expressed frustration with Plaintiff's ostensibly difficult behavior after Plaintiff asked, for cultural reasons, to be excluded from the monthly birthday celebrations for MainePERS employees. *Id.* ¶¶ 28, 32–36. Plaintiff engaged in a series of interactions with her supervisor, Hancock, and MainePERS higher-ups during which MainePERS employees treated her request to accommodate a cultural belief as "unreasonable and obnoxious." *Id.* ¶ 37. Plaintiff claims that the quality of her performance reviews sharply declined following these interactions, which she attributes to Defendant's desire to avoid accommodating cultural differences. *Id.* ¶ 38.

Third, in January 2020, Plaintiff became aware that another MainePERS employee, Kim Bumford, had asked whether she would "turn Chinese if" she ate Asian food and whether she "ha[d] to have slant eyes to eat" Asian food. *Id.* ¶ 42. Bumford was apparently reprimanded for this remark but was permitted to return to work shortly thereafter, *id.* ¶ 44, whereupon Plaintiff claims that Bumford "deliberately walked past [Plaintiff's] cubicle at least six times in an obviously hostile manner," *id.* ¶ 45. Plaintiff alleges that Bumford had

previously requested that Plaintiff be fired for taking unpaid family leave, *id.* ¶ 30, which Plaintiff suggests was motivated by racist views that Bumford may have held, *id.* ¶¶ 31, 42. Plaintiff "complained about Bumford's behavior" in response to this earlier incident, but alleges that "MainePERS did nothing to resolve the situation." *Id.* ¶ 30.

Plaintiff filed a complaint with the Maine Human Rights Commission. *Id.* ¶ 5. After properly exhausting her administrative remedies, Plaintiff filed suit in this court, alleging that Defendant created a hostile work environment in violation of the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964.

## DISCUSSION

"To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678. Ultimately, "a well-pleaded complaint may proceed even if . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted).

This analysis has two steps. First, I "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012). Then, I ask only whether the Complaint's "factual content," accepted as true, permits "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Iqbal*, 556 U.S. at 678). Crucially, I must not insert my own "assessment that the plaintiff will fail to find evidentiary support for [her] allegations or prove [her] claim to the satisfaction of the factfinder," *Twombly*, 550 U.S. at 563 n.8; so long as the facts alleged support an inference of liability, dismissal is inappropriate, *see Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011)

1. **Statute of Limitations**

As an initial matter, Plaintiff's claims are not time barred. In general, claims under Title VII or the Maine Human Rights Act ("MHRA") must be filed no more than 300 days after the allegedly discriminatory conduct occurred. *See* 42 U.S.C.A. § 2000e-5(e)(1); 5 M.R.S. § 4611. But because hostile work environment claims typically involve patterns of conduct and so "cannot be said to occur on any particular day," a court may consider "the entire time period of the hostile environment" so long as any "act contributing to the claim occur[ed] within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002). *See also LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶¶ 10–11, 909 A.2d 629, 633 (applying same rule under MHRA). Allegedly discriminatory or hostile conduct that predates the filing period must "substantially relate" to later allegations of abuse, *Lockridge v. The Univ. Of Maine Sys.*, 597 F.3d 464, 474 (1st Cir. 2010) (alterations and quotation omitted), such that all of the allegations can fairly be said to constitute "the same actionable hostile work environment practice." *Morgan*, 536 U.S. at 120. While no simple test exists, courts have in the past found conduct to constitute a single hostile work environment where the multiple allegations involved "the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers," *id.*,

4

or where the discriminatory acts in question involved similar "subject matter," *O'Rourke v. City of Providence*, 235 F.3d 713, 731 (1st Cir. 2001). Ultimately, whether allegedly discriminatory conduct constituted a single continuing violation is a factual question. *See id.* at 727.

Plaintiff filed a charge of discrimination with the Maine Human Rights Commission in March 2020, meaning that Plaintiff's allegations concerning conduct that occurred in January 2020—Bumford's alleged racist remarks in the workplace, Defendant's alleged failure sufficiently to discipline Bumford, and Bumford's alleged attempt to physically intimidate Plaintiff—are timely. Taking all of Plaintiff's factual allegations as true, the January 2020 events are also actionable, insofar as they were "directed at [Plaintiff] because of" her race and therefore reflect an "impermissible motivation." *Brader v. Biogen Inc.*, 983 F.3d 39, 64–65 (1st Cir. 2020) (quotations omitted). However, Plaintiff's allegations that predate June 2019—including her allegations involving a supervisor's racist remarks from 2014 and her allegations revolving around supposed cultural insensitivity in 2018—are time barred unless they were part of the same continuing violation as the January 2020 events.

I find it plausible that Plaintiff's pre-2019 allegations were part of the same hostile work environment as her allegations relating to Bumford's racist remarks in January 2020. Certainly, the 2014, 2018, and 2020 incidents all involve the same subject matter—Plaintiff's Asian-American heritage. And while the three incidents were committed by different MainePERS employees, the gravamen of Plaintiff's complaint is that higher-ups at MainePERS improperly responded to racially charged incidents. For the same reason,

5

the allegations all involve the same type of employment action—namely, disciplinary action taken or not taken in response to claims of racial hostility. This is enough to reasonably infer that the multiple allegations in the Complaint are part of the same pattern, even if Plaintiff has not established the requisite continuity with anything close to a certainty. Naturally, Defendants may revisit these arguments later with the benefit of a well-developed record.

### 2. Hostile Work Environment

To establish a hostile work environment under either Title VII or the MHRA, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) "the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment"; (5) the "objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive"; and (6) there exists "some basis for employer liability." *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 62 (1st Cir. 2019); *see also Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897, 903 (applying same test for MHRA claim). At the pleading stage, these elements are merely a "prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013). To survive a motion to dismiss, a plaintiff need only plead "enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial," not a "one-to-one relationship between any single allegation and a necessary element of the cause of action." *Id.* at 54–55.

There is no doubt that Plaintiff, who is Asian-American, is a member of a protected class. *See* 42 U.S.C.A. § 2000e-2 (listing race as a protected classification); *see also* 5 M.R.S. § 4572 (same). Her allegations, if true, would show that she was subjected to unwelcome treatment based on her race insofar as she was exposed to multiple incidents of racial hostility. And at least some of the conduct that Plaintiff describes would be objectively offensive to a reasonable person. *See Wilson v. Moulison N. Corp.*, 639 F.3d 1, 7 (1st Cir. 2011) (describing use of racial putdowns as "objectively and subjectively offensive conduct"). What's more, Plaintiff's allegations could support the inference that Defendant was responsible for creating a hostile environment by failing adequately to respond to racial abuse. *See id.* (employer is liable if it "knew or should have known about the harassment yet failed to take prompt and appropriate remedial action").

It is difficult at the pleading stage to conclude that the work environment at MainePERS "was so pervaded by racial harassment as to alter the terms and conditions of [Plaintiff's] employment." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 317 (1st Cir. 2016) (quotation omitted). Nonetheless, I find that the allegations before me could plausibly support such an inference. "In determining whether an actionable hostile work environment claim exists, [a court must] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Plaintiff alleges that Bumford physically intimidated her by walking repeatedly past her desk following an alleged racist incident, and that she

felt humiliated following the 2014 incident in which she was asked whether she sold drugs based on the assumption that Asian-Americans are involved in the drug trade. It is plausible that these events interfered with Plaintiff's work performance. It is also conceivable that the sporadic instances of abuse that Plaintiff describes are sufficient to support a hostile work environment claim. "While a plaintiff must show more than a few isolated incidents of racial enmity, there is no absolute numerical standard by which to determine whether harassment has created a hostile environment," *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 16 (1st Cir. 1999) (cleaned up), and courts have recognized a sliding scale between the frequency and the severity of the conduct at issue, *see Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 93 (1st Cir. 2018). Where the instant case falls in that murky morass strikes me as a nuanced determination best made with the benefit of a record.

Plaintiff has plead enough to clear the low bar necessary to survive a motion to dismiss under Rule 12(b)(6)[2], and her case lives to fight another day.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 5) is **DENIED**.

**SO ORDERED.**

Dated this 2nd day of March, 2022.

                                         /s/ Lance E. Walker
                                         UNITED STATES DISTRICT JUDGE

---

[2] Historically, the 12(b)(6) bar has been higher than in recent years but it appears a trend is developing in the First Circuit toward applying a standard that is in reality much closer to "notice pleading" familiar to practitioners in Maine courts. Precisely how universal or durable this jurisprudential shift will be is anyone's guess.